**MARTIN COMPANY**
v.
**UNITED STATES.**
No. 540–56.

United States Court of Claims.
Jan. 14, 1959.

---

1. The present motions are directed only to the plaintiff C. S. Townshend (88). This opinion relates only to him.

W. Houston Kenyon, Jr., New York City, for plaintiff. Jones, Day, Cockley & Reavis, Warren S. Ege, Washington, D. C., Kenyon & Kenyon, Theodore S. Kenyon, Hugh A. Chapin, New York City, were on the brief.

Henry Van Arsdale, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

MADDEN, Judge.

The plaintiff sues the United States pursuant to the provisions of 28 U.S.C. § 1498 for just compensation for the acquisition and use by the United States of aircraft fuel cells and tanks upon which, the plaintiff claims, it has patents. The Government, in its answer, alleges that the plaintiff's patents had been anticipated by 57 American patents, six foreign patents, and five publications. The answer asserts numerous other reasons why the patents are invalid. As originally filed, the answer asserted that the plaintiff had given the Government a license to use the patents. That assertion was later eliminated by amendment of the answer.

The Government also filed a contingent claim against three rubber companies which had manufactured fuel cells and tanks for it, claiming that these companies had agreed to indemnify the Government against any liability for the use of the patents, and asking that if any judgment should be obtained by the plaintiff against the Government, a judgment of like amount should be given the Government against the rubber companies.

The rubber companies made a motion to dismiss the Government's contingent claim against them, asserting that the Government, by certain dealings with the plaintiff, had so prejudiced and impaired the Government's capacity to defend against the plaintiff's suit, that the rubber companies had been released from their liability as sureties or indemnitors.

The court granted the motion of the rubber companies and dismissed the Government's contingent claim against them. Martin Co. v. United States, Ct.Cl., 163 F.Supp. 376. Thereupon the Government filed the instant motion for summary judgment dismissing the plaintiff's petition. It says that, because it has lost its right to indemnity against the rubber companies as a result of our decision of July 16, 1958, the plaintiff has lost the right to obtain a judgment against it, regardless of what might otherwise be the merits of the plaintiff's suit. The solution of the question depends upon the proper interpretation of Article XIV of a contract dated October 1, 1954, between the Government and the plaintiff. Article XIV provides:

"Martin agrees that if it obtains any judgment against The Government for compensation for the use of any of the inventions of any of the aforesaid patents, then to the extent, if any, that there existed no indemnity and/or hold harmless commitment by another, either on September 30, 1954, or subsequently, which extended to The Government (either directly or through a prime contractor with The Government or otherwise) in respect of such a liability as that represented by such judgment, Martin will not seek payment thereof."

The Government says that "there existed no indemnity * * * either on September 30, 1954, or subsequently * * *" to-wit, on July 16, 1958, after our decision that the rubber companies had been released from their contracts of indemnity. *Ergo,* says the Government, the plaintiff has agreed that if it should get a judgment, it would "not seek payment thereof." If the plaintiff would not seek payment of a judgment if it got one, it is obvious that the energies of the court and the parties should not be used up in a trial which would involve, among other things, 57 alleged anticipatory American patents, six foreign patents and five prior publications.

The Government says that the meaning of the language of Article XIV is perfectly plain, hence it needs no interpretation. The plaintiff does not say that the language perfectly plainly means the opposite of what the Government says it means. The plaintiff says that, in its context, and placed in the setting of the negotiations leading up to the choice of the language, it does not have the meaning which the Government would attribute to it.

Our question is whether "no indemnity on September 30, 1954 or subsequently" meant, to the parties, "an absence of indemnity both on September 30, 1954, and subsequently." The significance of the September 30 date was that the agreement, of which Article XIV was the final paragraph, was dated October 1, 1954. It was a long and complicated agreement, attempting to settle once and for all numerous mutual claims of the plaintiff and the Government. The Government had been paying royalties to the United States Rubber Company and the Manufacturers Aircraft Association which held licenses from the plaintiff to use its patents. The Government had given statutory notices that it intended to proceed under the Royalty Adjustment Act, U.S.Code Cong.Serv.1942, p. 1727 to have those royalties adjusted. It had also been procuring materials from the non-licensed rubber companies which were formerly involved in this suit as third party defendants, and the plaintiff was demanding compensation on that account. The October 1, 1954 agreement took into account these circumstances and events, called for the withdrawal by the Government of its Royalty Adjustment Act notices, gave a license to the United States for procurement ordered after September 1, 1955, and provided formulas for payment of compensation for procurement obtained before that date.

The question of what should be done about past procurement from unlicensed manufacturers was considered at length in the negotiations leading up to the written agreement. Fortunately those negotiations were largely in the form of letters, and are available to us. The parties knew that unlicensed manufacturers had been required by the Government to agree to indemnify the Government against liability to owners of patents covering the procured material. They knew that such a manufacturer would probably have added something to the price of the product to cover its possible liability on its indemnity agreement. The Government desired, in its agreement with the plaintiff, to protect itself against having to pay twice for the use of the patent. There was much written discussion of that problem.

Although the comprehensive agreement between the Government and the plaintiff was dated October 1, 1954, it was in fact negotiated in 1955 and dated back to October 1, 1954. In the negotiations, Martin had proposed that Article IV of the agreement should provide that the Government acknowledged the validity of the Martin patents, and that it had no license to use those patents. The Martin proposal also suggested an Article XIV in the exact form in which it appeared in the final agreement.

The Government rejected the Martin proposals for the reason that "these articles do not provide adequate protection against double payment by the Government". The Government representative wrote to Martin:

"The proposed articles, however, would permit Martin to collect from

the Government if an indemnity existed on 30 September 1954, despite the fact that the indemnity might not be enforceable at the time of judgment, and even though the Government has already paid an additional charge for such indemnity."

He further wrote:

"It is reasonable to believe that a court might hold that the patent indemnity articles are nullified by reason of the Government's settlement of the claim [i. e. Martin's claim] without the consent of the contractors and by reason of the Government's waiver of defenses in Article IV. Any indemnity extending directly to the Government through a prime contractor or otherwise may be similarly nullified."

The reference in the last quotation to the waiver of defenses in Article IV was to Martin's proposals that the Government acknowledge the validity of the patents, and the nonexistence of a license to use them.

The Government proposed another form of Article XIV. It would have omitted any reference to September 30, 1954, and provided that Martin would not seek payment of the judgment to the extent that no indemnity "exists" in favor of the Government. The letter said that its proposal was made "In order to make it clear that the Government will pay any judgment only to the extent that it is legally entitled to reimbursement."

Martin objected to the Government's proposed Article XIV on the ground that it would permit either the Government, or an unlicensed prime contractor having a contract of indemnity with a subcontractor, to release the indemnitor and thus destroy Martin's claim against the Government, without, in either case, any cost to the Government. It said that, at best, the Government's proposal would require not only litigation to obtain a judgment against the Government, but further controversy and probable litigation "over the question whether or not the conditions then existed which would make the judgment collectible."

Martin urged that, contrary to the Government's apprehensions, there was little danger that a court would hold that Martin's proposed Article IV in which the Government would have acknowledged the validity of the patents and the non-existence of a license to use them would have the effect of releasing the indemnitors. It urged that the rubber companies would not offend so good a customer as the Government by trying to escape from their liability to it as indemnitors, and that if they did, "a court would apply the well-established rule against unjust enrichment in such a situation."

The Government responded that it recognized "that Martin may possibly be faced with certain difficulties if our proposed version of Article XIV is used." It offered the compromise of accepting Martin's proposed Article XIV if Martin would consent to the elimination from Article IV of the acknowledgment by the Government of the validity of Martin's patents. Martin accepted the proposed compromise and the agreement was so written and signed.

The expressions in the negotiations leave no doubt whatever as to what the parties meant by Article XIV. The Government's representative, as we have seen, wrote, "The proposed articles, however, would permit Martin to collect from the Government if an indemnity existed on 30 September 1954, despite the fact that the indemnity might not be enforceable at the time of judgment * * *." The proposed article was then rejected for that reason. Later, without any further discussion of the meaning of the article, it was accepted, as an element of a compromise involving an important concession by the plaintiff as to Article IV.

Our conclusion is that, since the contracts of indemnity were valid and binding on September 30, 1954, and were not released until the Agreement of October 1, 1954, was made, with its acknowledgment of the non-existence of a license, Article XIV did not have the effect of making a judgment which the plaintiff might recover in this case uncollectible.

The plaintiff's argument to the Government's negotiators that the rubber companies would not offend one of their best customers by seeking to escape from their contracts of indemnity, proved ill-founded. The rubber companies, as our prior decision shows, did just what it was predicted they would not do, and succeeded in the attempt. The plaintiff's suggestion that by some equitable doctrine of unjust enrichment the Government might avoid having to pay twice for the use of the patents would, perhaps, have been difficult to document. These were legitimate arguments presented by lawyers to lawyers in the course of negotiation of an agreement, and do not impair the validity of the agreement.

The defendant's motion for a summary judgment is denied.

It is so ordered.

FAHY, Circuit Judge, sitting by designation, JONES, Chief Judge, and LARAMORE and WHITAKER, Judges, concur.