**MARTIN–MARIETTA CORPORATION**

v.

**The UNITED STATES.**

**No. 540–56.**

United States Court of Claims.
March 17, 1967.

LINS, SKELTON and NICHOLS, Judges.

## OPINION

COWEN, Chief Judge.*

This is a patent suit under Title 28 U.S.C. § 1498, in which the plaintiff seeks to recover reasonable and entire compensation for the alleged unauthorized use of patented inventions. Plaintiff alleges infringement of claims 1 and 2 of U.S. Patent No. 2,381,739 and claims 1 and 2 of U.S. Patent No. 2,421,613. Patent 2,-421,613, entitled "Plastic Liner For Containers", hereinafter referred to as the liner patent, is based on an application filed December 14, 1941, by Reid B. Gray and Joseph C. DeWeese. Patent No. 2,-381,739, entitled "Hidden Barrier", hereinafter referred to as the barrier patent, is based on an application filed April 1, 1942, by Reid B. Gray. Plaintiff Martin-Marietta Corporation, referred to as Martin, is the owner by assignment of the entire right, title, and interest in the patents in suit.

The defendant raises the defense, among others, that the patents were obvious to a person having ordinary skill in the art at the time and therefore unpatentable under 35 U.S.C. § 103. Recently, the Supreme Court in Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L. Ed.2d 545 (1966), laid down the guidelines to be followed in applying this statute.

> Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Id. at 17, 86 S.Ct. at 694.

Mindful that "strict observance" of these standards is required (Id. at 18, 86 S.Ct. 684), we turn now to the patents.

W. Houston Kenyon, Jr., New York City, attorney of record, for plaintiff. William T. Boland, Jr., Edward J. Handler, III, Donald J. Lisa, and Kenyon & Kenyon, New York City, of counsel.

Thomas J. Byrnes, Washington, D. C., with whom was Asst. Atty. Gen. Barefoot Sanders, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COL-

---

* The court acknowledges the assistance it has received from the report of Trial Commissioner Donald E. Lane. We concur in the result he reached and have relied heavily upon his opinion.

## LINER PATENT

█ The invention disclosed and claimed in the liner patent relates to a liquid hydrocarbon container or fuel cell having an outer supporting structure and an inner flexible cell. Fuel cells are used primarily in military and other aircraft as storage containers for gasoline, oil, or other aircraft fuel. Originally, metal tanks built into the wings or fuselages of aircraft were used, but as the size of airplanes grew and their wings became increasingly flexible, metal tanks were found to leak. Furthermore, metal tanks did not have self-sealing properties, a necessary requirement for military aircraft in case of gunfire wounds to the aircraft containers.

Beginning in the middle 1930's, plaintiff, under the direction of Gray, developed a flexible fuel container liner or cell which could be folded through a small opening in an airplane wing and which would, when filled with fuel, expand to fill the cavity inside the wing.[1] To solve the problem of self-sealing, the cell was enclosed in an outer layer of soft unvulcanized rubber. When this rubber came into contact with the gasoline, it would quickly swell and seal any hole. The sealant, in turn, required an outer layer of tough wear-resistant and gasoline-resistant synthetic to protect it and the cell in handling and use.

Prior to the discovery of synthetic rubbers, materials such as shellac, beeswax, metal foil, gold-beater's skin, and lacquer had been suggested as the protective inner lining for gasoline containers. By the late 1930's, synthetic rubbers such as neoprene and thiokol were principally used as inner protective linings.

By the latter part of 1939, it became apparent that the high octane gasolines and aromatic fuels soon to be used by airplanes would cause problems with the neoprene-lined flexible fuel cells. Such fuels slowly diffuse or permeate through neoprene or thiokol; as a result, the sealant will prematurely swell, distort, or blister, destroying the cell. Concurrently with the development of the flexible fuel cell, E. I. duPont de Nemours & Company developed a plastic synthetic linear condensation polymer material more commonly known as nylon. Many of the properties and suggested uses of this product—such as its excellent resistance to fuels and organic liquids—had become generally known to the scientific community by 1939.

In the early part of 1940, Gray, having been informed that nylon was flexible and had aromatic-resistant properties, asked duPont for nylon film to test for fuel cell application. The duPont personnel assisted Gray and DeWeese in developing methods and materials to bond nylon to synthetic and natural rubbers. Beginning in September 1940 and continuing into June 1941, Gray and DeWeese constructed and began testing a gasoline self-sealing type container having a nylon inner lining to determine the effect of high octane gasoline on the container construction. The nylon, situated before the neoprene lining, prevented the aromatic fuels from diffusing through the neoprene and affecting the sealant. On December 15, 1941, Martin filed the Gray and DeWeese application for the liner patent. It contained broad claims directed to nonsealing as well as self-sealing liquid containers having nylon linings.[2]

Plaintiff now asserts that Gray was the first to discover that nylon was sufficiently capable of elastic recovery from distortion created by the pressure wave

---

1. In recognition of this development, Martin obtained in 1937 Gray et al. patent 2,-102,590, not here in suit.

2. A controversy developed between duPont and Martin personnel concerning who had priority to the nylon lining invention, and, in December 1941, the respective patent attorneys of the parties met to consider the subject. The report of the meeting is not a part of the record. However, duPont did file the Holt and Sullivan applications for patents on January 22, 1942, these applications maturing into patents 2,422,239 and 2,405,986, respectively, containing narrower claims directed to self-sealing fuel containers having nylon linings.

of a bullet and was shatter-proof under gunfire shock at temperatures far below 0° Fahrenheit so as to be satisfactory as an inner lining material for foldable airplane fuel cells. It should be pointed out, however, that the liner patent does not disclose these properties for the benefit of the public, and that the claims in issue are not limited to airplane fuel cells or self-sealing fuel cells or to containers resistant to aromatic fuels. Rather, they extend to all liquid hydrocarbon containers.

Furthermore, the duPont nylon patents earlier disclosed the gasoline-resistant and aromatic-resistant qualities of nylon. The Carothers patent 2,188,332, filed in February 1937 and cited by the patent examiner, states that nylon is a flexible material which "exhibit[s] exceptionally good resistance to greases, oils, most organic liquids, water and vapors." Carothers patent 2,252,554, filed in September 1938, suggests that nylon can be used as an inner lining material for a rubber gasoline hose. Hanford patents 2,281,576 and 2,293,388, not cited by the Patent Office, filed in October 1939 and November 1939, respectively, state: "Rubber may also be coated with polyamides [nylon] to decrease the sensitivity to aromatic hydrocarbons." Gray himself testified that he was attracted to nylon because he had been informed that nylon was resistant to aromatic fuels.[3]

In view of this explicit prior art, it was obvious to a person skilled in the liquid hydrocarbon art in 1940 to use nylon as an inner lining for fuel tanks. See B. F. Goodrich Co. v. United States Rubber Co., 244 F.2d 468, 469–470 (4th Cir. 1957); Perma-Fit Shoulder Pad Co. v. Best Made Shoulder Pad Corp., 218 F.2d 747, 750–751 (2d Cir. 1955). Therefore, the invention defined in claims 1 and 2 of the liner patent is unpatentable.

## BARRIER PATENT

Problems arose with the use of a nylon lining in the flexible fuel cell. Aromatic fuels pick up water which, when sloshed within the cell, softens and detaches the nylon from the synthetic rubber. Moreover, nylon tends to pinch or crack when the cell is sharply folded. Also, it is difficult to manufacture properly a fuel cell with an inside membrane of nylon.

Faced with these problems, Gray conceived the idea of placing the nylon between the neoprene and the sealant instead of before the neoprene. This locates the nylon in a "hidden barrier" position, shielded by the inner synthetic neoprene from damage from the sloshing of water-containing aviation gasoline and yet in position effectively to prevent elements of the aviation gasoline from diffusing into the sealant. In effect, the sealant is protected from aviation gasoline by the nylon, and the nylon is protected from water in the gasoline by the neoprene. Placing the nylon in this barrier position lessens the problems of manufacture present with the liner patent; also, the nylon when used as an intermediate layer does not crack as readily when the cell is folded.

Thus, Gray's improvement over the prior art consisted of shifting the nylon membrane from its position as a liner before the neoprene layer to one behind the neoprene and before the rubber sealant. Gray had reduced the hidden barrier concept to writing as of January 1, 1941, but U. S. Rubber Company with the assistance of Gray began experimenting with nylon sandwiched between two layers of thiokol synthetic rubber on October 1, 1941, and that date must

---

3. During the prosecution before the Patent Office, it was argued that Gray discovered that nylon had a low permeability to aromatic fuels which materially influenced the Patent Office to issue the liner patent. However, during the trial, Gray, on cross-examination, did admit that he had previously known that nylon had aromatic-resistant properties. It is doubtful that the claims in issue of the liner patent would have been allowed by the Patent Office had it known this fact or had it cited either of the Hanford patents '576 or '388.

be taken as the earliest date of Gray's invention.[4] Of relevance is that James A. Merrill and Dr. Lorin S. Sebrell, employees of Goodyear Tire and Rubber Company, independently suggested in December of 1941 that a nylon layer be placed between layers of buna synthetic rubber. On December 25, 1941, they in fact constructed a flexible liner having a nylon layer between two layers of buna synthetic rubber.

In deciding whether Gray's invention was obvious to one skilled in the art at that time, several aspects of the prior art must be stressed. The first is that the several duPont patents filed in the late 1930's made the aromatic-resistant properties of nylon widely known. Secondly, the use of nylon as an inner protective liner was obvious by 1941 to persons skilled in the liquid hydrocarbon container art. Thirdly, the use of a barrier to prevent diffusion in a fuel cell was not novel. The Eger patent 2,401,-627, filed May 16, 1941, discloses a self-sealing aircraft gasoline tank having an inner or first layer of neoprene, a second layer of supporting fabric, a third layer of cellulose acetate, a fourth layer of sealing rubber latex and an outer or fifth layer of supporting fabric.

To be sure, cellulose acetate is an inflexible material which could not be used in the flexible fuel cell involved here. But this does not deprive the Eger patent of all relevance as prior art. Cf., Skee-Trainer, Inc. v. Garelick Mfg. Co., 361 F.2d 895, 898 (8th Cir. 1966). The Eger patent is relevant in that it suggests that the problem of aromatic fuel diffusion in a neoprene cell may be solved by the use of a membrane situated between the neoprene and the sealant which would act as a barrier. The specifications themselves of the Eger patent state: "Besides functioning as a stiffening agent, the cellulose acetate inhibits the diffusion of materials such as gasoline and benzol through the tank lining."

Also relevant is patent 2,425,514, filed by Dasher on August 16, 1940. This patent involved a self-sealing airplane fuel cell having a gasoline-resistant inner or first layer, a second layer of sealing unvulcanized rubber that will swell when in direct contact with gasoline, and a third or outer layer of vulcanized rubber. Its specifications state:

It is not essential that the sealing layer be made throughout of a single material, for it is possible and sometimes advantageous to make different portions of it of different materials or even to subdivide the total thickness of the sealing layer into a plurality of portions and interpose other materials of any of the three types, namely, gasoline-impervious, or sealing material, or tough skins.

Thus, both patents disclose the concept found in the barrier patent of positioning a gasoline-impervious membrane behind a layer of synthetic rubber. Gray's improvement over this prior art consists simply of substituting nylon, a material not mentioned in the Eger or Dasher patents but whose aromatic-resistant properties were widely known, for other materials to act as the barrier. Such an improvement was obvious to one skilled in the art. "The cases have consistently held that there is no invention in the substitution of an improved material when it subsequently becomes available." B. F. Goodrich Co. v. United States Rubber Co., 147 F.Supp. 40, 77 (D.Md.1956), aff'd 244 F.2d 468 (4th

4. Plaintiff contends that Gray reduced his hidden barrier concept to physical form in September 1940 by the construction of a fuel cell having a nylon inner lining bonded to neoprene by a nylon cement, suggesting that the nylon cement is the intermediate nylon membrane that is recited in the barrier patent claims. It is clear that the purpose of the nylon cement was to bond the first inner layer of nylon to the neoprene layer and is not an intermediate barrier layer having lower diffusion characteristics than the adjacent layers as shown or claimed in the barrier patent. It was not until October 1, 1941, after encountering problems with the fuel cells having an inner nylon lining, that development was begun by the U.S. Rubber Company personnel, with Gray's assistance, to construct a fuel cell having a nylon layer behind a thiokol synthetic rubber layer.

Cir. 1957). Gray's invention was that of a skillful mechanic rather than that of an inventor; as such, it is not patentable. Hotchkiss v. Greenwood, 11 How. (52 U.S.) 248, 267, 13 L.Ed. 683 (1851).

■ Plaintiff relies upon several nontechnical subtests of validity to demonstrate that the barrier patent here in question was not obvious in 1941. See Notes, Subtests of "Non-obviousness": A Nontechnical Approach to Patent Validity, 112 U.Pa.L.Rev. 1169 (1964). Such "secondary considerations" may be relevant in some instances. Graham v. John Deere Co., supra, 383 U.S. at 17–18, 35–36, 86 S.Ct. 684. They are not persuasive here. The presumption of validity accorded to a patent issued by the Patent Office is greatly weakened here by the fact that much of the pertinent prior art was not considered by the Patent Office.[5] Soundscriber Corp. v. United States, 360 F.2d 954, 960, 175 Ct.Cl. 644 (1966); Zero Manufacturing Co. v. Mississippi Milk Pro. Ass'n, 358 F.2d 853, 855 (5th Cir. 1966), cert. denied, 385 U.S. 841, 87 S.Ct. 93, 17 L.Ed. 2d 74; Skirow v. Roberts Colonial House, Inc., 361 F.2d 388, 390 (7th Cir. 1966). The effect of an arbitration decision by the Manufacturers Aircraft Association upholding the validity of the barrier patent is weakened by the fact that the arbitration award has been suspended pending the final decision of this court concerning the validity of both the liner and barrier patents. Other factors such as the commercial success of the patent are not sufficient here to "tip the scales of patentability". Graham v. John Deere Co., supra, 383 U.S. at 36, 86 S.Ct. 684. When the claimed invention is obvious in light of the prior art, these other facts may not make the patent valid. See Gentzel v. Manning, Maxwell & Moore, 230 F.2d 341, 343–344 (2d Cir. 1956), cert. denied, 352 U.S. 840, 77 S.Ct. 63, 1 L.Ed.2d 57 (1956).

■ One further contention by plaintiff has been considered. In 1950 and 1951, the Department of the Air Force and the Department of the Navy issued notices to plaintiff and its licensees pursuant to the Royalty Adjustment Act of 1942, 56 Stat. 1013, as amended, 65 Stat. 710 (1951), stating that the royalties being charged by plaintiff were unreasonable and excessive. As a result, more than one million dollars in royalties owed to plaintiff by licensees was withheld. Thereafter, plaintiff and defendant entered into a contract dated October 1, 1954, in settlement and compromise of plaintiff's claim. This contract recites that, in consideration of the Government's withdrawal of the notices, the plaintiff grants to the Government a royalty-free license under three patents, one of which was the barrier patent in suit, with respect to all fuel cells first placed on order with a manufacturer on or after September 1, 1955.

Plaintiff now argues that the Government's withdrawal of its notices concerning royalties on the licensed use of the barrier patent constitutes a recognition by the Government that the barrier patent was in fact valid. But the withdrawal of these notices was not intended to be a recognition of the validity of the patents involved—it was only the *quid pro quo* in return for the granting of royalty-free licenses. This is amply demonstrated by the parties' negotiations preliminary to the execution of the contract. Plaintiff initially proposed that the contract contain a clause specifically recognizing the validity of the patents. The Government refused to accept such a clause and offered other concessions in return for plaintiff's consent to the elimination of the recognition clause. Plaintiff accepted this compromise. See Martin Company v. United States, 169 F.Supp. 524, 144 Ct.Cl. 714, 718–719 (1959), where the negotiations between the parties are set out at length. In light of these facts, the contract cannot be construed as implied recognition of the validity of the barrier patent by the Government.

---

5. The Hanford patent '576 and '388, the Eger patent '627, and the Dasher patent '514 were not before the Patent Office.

Thus, both the liner patent and the barrier patent are invalid on the grounds that they were obvious to one skilled in the art at that time. In view of this determination, we need not consider defendant's alternative defense that the patents were invalid for indefiniteness, or the question of infringement. Plaintiff's petition is dismissed.