## PRIEBE & SONS CO. v. HUNT et al.

### No. 14223.

United States Court of Appeals
Eighth Circuit.

May 4, 1951.

Casper W. Ooms, Chicago, Ill. (Owen J. Ooms, Chicago, Ill., and Benjamin F. Swisher, Waterloo, Iowa, on the brief), for appellant.

F. O. Richey and H. F. McNenny, Cleveland, Ohio (Richey & Watts, Cleveland, Ohio, on the brief), for appellees.

Before GARDNER, Chief Judge, and THOMAS and RIDDICK, Circuit Judges.

GARDNER, Chief Judge.

This appeal is from a judgment holding Hunt Patent No. 2,300,157, for "Feather-Picking Apparatus for Fowls and the Like," valid and infringed by certain chicken-picking machines used by appellant

but built by others. The parties will be referred to as they were designated in the trial court.

Plaintiff Anna May Hunt, Administratrix, is the owner and plaintiff Greenbrier Company is the licensee of the Hunt patent. The defendant is a poultry processor. Defendant challenged the validity of the patent, denied infringement, and affirmatively pleaded patent misuse. By stipulation of the parties the case was tried on the record made in an earlier suit under the same patent against Armour and Company, Hunt v. Armour & Co., D.C., 90 F.Supp. 767. The trial court found all the issues in favor of plaintiffs and entered judgment enjoining defendant from using or causing to be used any poultry-picking machines embodying the invention described in the Hunt patent and adjudging that plaintiffs recover general damages for the infringement.

The Hunt patent contains 19 claims but prior to the institution of this suit claim 16 of the patent was disclaimed. Defendant was charged with the infringement of claims 2, 3, 7, 8, 10, 12, 14, 17 and 19 by reason of its use of machines and fingers for such machines manufactured respectively by F. J. Albright Company and Gordon Johnson Company. The device disclosed by the patent comprises a hollow drum mounted in a frame and driven by an electric motor. From the outside surface of the drum extend flexible fingers arranged completely around the drum and extending outward at an angle or inclination of 14 degrees. The fingers are arranged in spaced rows, each row being staggered with reference to the adjacent rows. In the preferred form the fingers have a tapered bore extending from the outer or free end almost as far as the corrugations extend. The specifications recite that solid fingers would remove feathers but that the operation was speeded by the use of hollow fingers.

Before a chicken is processed it is dipped in hot water, the temperature varying, dependent upon whether the chicken is being prepared for immediate sale or for cold storage. The operator places the chicken against the fingers projecting from the revolving drum and by turning the chicken to different positions all parts of its body are contacted by the fingers of the machine and the feathers removed by a rubbing or scrubbing action. When higher temperatured water is used the machine removes practically all of the feathers within a period of from eight to ten seconds and the machine does a noticeably better job of picking than does the hand picker. The court found that, "Until the Hunt patent, and the disclosures made by Hunt, no machine had been built or constructed which successfully picked fowl by mechanical means. Such prior art as has been disclosed consists entirely of 'paper' patents for machines that were either never built or never operated in accordance with the disclosures of those patents."

The court also found that the machine defined by the finger claims of the patent "were new and useful, accomplished important new results and embodied patentable invention. The patent in suit is a pioneer patent and basic in nature." The court further found that, "The machine of the Hunt patent met with immediate commercial success and has continued to meet with commercial success."

In seeking reversal defendant renews the contentions urged by it in the trial court.

The court found that the Hunt patent is a pioneer patent and basic in nature. This is probably a mixed question of law and fact. The finding is not specifically challenged on this appeal but we think it important to consider this holding of the court at the very inception of our consideration of the issues. A primary or pioneer invention is entitled to a broad and liberal construction and to a broad and liberal range of equivalence and is not to be limited to the precise device and instrumentality disclosed. Dean Rubber Mfg. Co. v. Killian, 8 Cir., 106 F.2d 316, certiorari denied, 308 U.S. 624, 60 S.Ct. 380, 84 L.Ed. 521; Flowers v. Austin-Western Co., 7 Cir., 149 F.2d 955; Mason Corporation v. Halliburton, 10 Cir., 118 F.2d 729. We think the finding is sustained by abundant evidence. This device performed a function never successfully performed by an earlier invention. It was of such novelty

and importance as to mark a distinct forward step in the progress of the art. It has in fact revolutionalized the art and was the first successful solution of the problem involved.

We should perhaps here observe that while this patent is a comparatively new one, it has been the subject of much litigation. This litigation will be found reflected in the following reported cases: Campbell v. Mueller, 6 Cir., 159 F.2d 803; Hunt v. Armour & Co., 7 Cir., 185 F.2d 722; Mueller v. Campbell, D.C., 68 F.Supp. 464; Mueller v. Campbell, D.C., 68 F.Supp. 475; Mueller v. Wolfinger, D.C., 68 F.Supp. 485; Mueller v. Pickwick, Corp., D.C., 94 F.Supp. 742; Hunt v. Armour & Co., D.C. 90 F. Supp. 767; Mueller v. Wolfinger, D.C., 91 F.Supp. 971; Hunt v. Priebe & Sons, D. C., 92 F.Supp. 767.

Judge Duffy, speaking for the Court of Appeals for the Seventh Circuit, in Hunt v. Armour and Company, supra, in a searching opinion reviews the many cases which had passed upon the validity and scope of the Hunt patent.

In view of the unanimity of judicial reaction to the various contentions urged against the validity and scope of this patent, it would be presumptuous in us to attempt to add anything to the law or literature as applied to this patent. While these decisions may not be binding upon us they are certainly persuasive and should not lightly be brushed aside. Faulkner v. Gibbs, 338 U.S. 267, 70 S.Ct. 25, 94 L.Ed. 62; Republic Steel Corp. v. Farval, Corp., 6 Cir., 179 F.2d 719. Neither may the findings of the trial court as to validity and infringement be set aside unless clearly erroneous. Buder v. Becker, 8 Cir., 185 F.2d 311; Hunt v. Armour & Co., 7 Cir., 185 F.2d 722.

The prior art relied upon, including the Bouda and Richards patents, was before the Patent Office and likewise before each of the courts in the above cited cases. District Judge Shaw in Hunt v. Armour & Co., 90 F.Supp. 767, 769, in referring to the so-called prior art relied upon, among other things said: "It is my holding, and the record shows conclusively, that until the Hunt patent and the disclosures made by Hunt there was never any machine built that successfully picked chickens mechanically. Such prior art as has been disclosed consists entirely of 'paper' patents, none of which has ever been built or operated in accordance with the disclosures of those patents."

We are in accord with this view as expressed by Judge Shaw, based upon the same record as is now before us, and there being no prior art, the Hunt patent is entitled to a liberal construction.

Having in mind the rule applicable to the construction of a basic or pioneer patent, we turn to a consideration of the question of infringement by the devices used by the defendant. There are two classes of claims embodied in the patent—machine claims and finger claims. Claims 2 and 3 are said to be typical of the machine claims. They read as follows:

"Claim 2. A feather plucking device comprising a rotatable member having secured thereto means projecting from the outer surface thereof, said means being substantially cylindrical in shape, of elastic material, and having projections on the surface thereof, a portion of said means adjacent one end thereof being hollow.

"Claim 3. A feather plucking device comprising a rotatable member having secured thereto means projecting from the outer surface thereof, said means being substantially cylindrical in shape, of elastic material, and having projections on the surface thereof, a portion of said means having a thin wall and the remainder thereof having thicker wall portions."

No single claim may be said to be typical of the finger claims. Thus, Claim No. 12, reads as follows: "Claim 12. A poultry plucking finger member of the character described comprising a substantially cylindrical body formed of elastic material and having projections on the outer surface thereof, a portion of said body throughout its length being hollow, the walls of the body being sufficiently thick to avoid collapse in a direction parallel to the longitudinal axis when the finger is in use."

It is observed that this claim describes the fingers as hollow. However, Claims 3,

8, 14, 17 and 19 do not recite the hollow feature.

It is strenuously argued that the accused devices do not infringe because the fingers on those devices are not hollow. This argument assumes that the fingers used by the defendant are solid. The finger used in the Albright device is a trough-like structure, while the finger used in the Johnson device is cut away at the back. Each of these fingers in a sense at least is hollowed on the outside. Part of the material in these devices is cut away. In the hollow finger the cut is on the inside and in the other finger the cut is on the outside. Even in patent law, substance is more important than form and should control over mere words. An expert witness was interrogated with reference to the difference in these fingers as follows:

"Q. What is the effect of the removal of rubber by making one side flat in the finger, Defendant's Exhibit 5, as compared to the effect of a hollow interior as illustrated in the Hunt patent in suit? A. It increases the flexibility of the finger because of the decrease of the amount of material in the finger.

"Q. How does that compare with the effect of the hollow in the finger of the Hunt patent in suit? A. The effect of it is the same."

It is elementary that infringement can not be avoided by a mere reversal of parts where the functions and operations are the same. It is observed too that Claim 17 provides for "flexible studs projecting outwardly from the drum, each stud having a plurality of projections on the face thereof, the outer end of each stud being recessed to provide edges thereon in spaced relation in the plane of the edges." This claim, with Claims 18 and 19, was embodied to cover the idea of "having an opening or cutout portion of the outer end of the finger." In Hunt v. Armour & Company, supra, in speaking of these claims, it is said: "As allowed, patent Claims 17 and 19, with the express agreement of the examiner, covered both solid and hollow fingers, with either the end surface or a side surface of the outer end portion re-cessed to provide spaced edges or spaced surfaces."

These claims as allowed read directly on the so-called solid finger construction, and the other claims, while not reading directly on the solid finger construction, are infringed under the doctrine of equivalence. If the claims may be said to be ambiguous, then resort may be had to the specifications and in the Hunt patent the specifications clearly reserve the solid finger. In these specifications it is said: "Also, it has been found that a solid finger of the kind described will remove feathers satisfactorily but the operation is further speeded up if a tapered bore is formed in each finger with the taper decreasing inwardly as shown in Fig. 3."

It is further said: "Although I have illustrated and described the preferred form of my invention, it will be obvious that various changes may be made therein without departing from the spirit of the invention or from the scope of the subjoined claims."

It is doubtless true that an element may not be read into or out of a claim by referring to the specifications, yet an element may be construed in the light of the specifications in view of the merit of the invention. The rubber finger is recited in each claim and the question is whether the finger described must necessarily be a hollow finger or whether it may be a hollow or a solid finger. Certainly a number of these claims do not recite a hollow finger and we think the infringer may not read the hollow finger into the claim in order to avoid infringement.

The test of infringement is whether the accused device does substantially the same work in substantially the same way to accomplish the same result by the same or equivalent means and infringement is not to be avoided by a substitution of equivalence whether the equivalent is verbally within the claim or not, nor may it be avoided by a mere transposition or reversal of parts. Graver Tank Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 70 S.Ct. 854, 856, 94 L.Ed. 1097; Willis v. Town, 8 Cir., 182 F.2d 892; Dean Rubber Mfg. Co.

v. Killian, supra; Montgomery Ward & Co. v. Clair, 8 Cir., 123 F.2d 878; Vallen v. Volland, 8 Cir., 122 F.2d 175. In Graver Tank Mfg. Co. v. Linde Air Products Co., supra, in speaking of the doctrine of equivalence, the Supreme Court said: "The essence of the doctrine is that one may not practice a fraud on a patent. Originating almost a century ago in the case of Winans v. Denmead, 15 How. 330, 14 L.Ed. 717, it has been consistently applied by this Court and the lower federal courts, and continues today ready and available for utilization when the proper circumstances for its application arise. 'To temper unsparing logic' and prevent an infringer from stealing the benefit of the invention' a patentee may invoke this doctrine to proceed against the producer of a device 'if it performs substantially the same function in substantially the same way to obtain the same result.' Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 42, 50 S.Ct. 9, 13, 74 L.Ed. 147. The theory on which it is founded is that 'if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are 'the same, even though they differ in name, form or shape.' Union Paper-Bag Machine Co. v. Murphy, 97 U.S. 120, 125, 24 L.Ed. 935."

■■ On this phase of the case we are of the view that the accused devices used by the defendant infringe the Hunt patent. It is, however, urged that plaintiffs are not entitled to a liberal construction of the Hunt patent because of a file wrapper estoppel. In answer to this contention we adopt the words of Judge Duffy in Hunt v. Armour & Co., supra:

"Of course accepting a narrower claim when the Patent Office makes it a condition of the grant may result in estoppel. Cadillac Motor Car Co., et al. v. Austin, 6 Cir., 225 F. 983. However, our examination of the proceedings as shown in the file wrapper convinces us that Hunt did not surrender his claims which were broad enough to cover a solid finger, and that the Patent Office did not make any such limitation a condition of the grant.

"Hunt filed his application in the Patent Office disclosing the preferred form of machine equipped with hollow fingers having a tapering bore. However, the specification disclosed that a solid finger could also be used, instead of the hollow form. The examiner at first rejected many of Hunt's claims on the prior art. Thereupon Hunt and his solicitor had an interview with the principal examiner and his assistant, and demonstrated the Hunt machine. Following this demonstration all of the claims, including both the allowed and rejected claims, were cancelled 'without prejudice.' The rewritten claims included both broad and narrow claims, and included Claim 31, which was broader than any claim theretofore presented. The examiner acquiesced in the cancellation of the claims 'without prejudice,' and the rewritten claims including the broad claims were allowed and made counts of the three interferences which the examiner thereupon set up." [185 F. 727.] See, also: Hunt v. Armour & Co., D.C., 90 F.Supp. 767; Mueller v. Wolfinger, D.C., 91 F.Supp. 971; Hunt v. Priebe & Sons, D.C., 92 F.Supp. 767.

■ We conclude that the trial court was not in error in holding that there was no file wrapper estoppel shown in this case.

It remains to consider the "misuse" defense. This defense is apparently based upon the fact that plaintiffs and their licensees sell machines and also sell separately fingers covered by the finger claims of the Hunt patent, the fingers for use as replacements for worn-out fingers in licensed machines. This same defense was pleaded by defendants in all of the other cases above cited, involving the Hunt patent. In the instant case the trial judge found as follows:

"21. The plaintiffs are not and have not been using the Hunt patent in suit to control the sale of unpatented poultry machine components.

"22. The plaintiffs do not control or attempt to control the patented fingers after the patent monopoly on the fingers is exhaused by the sale of them.

"23. The plaintiffs have not expanded or attempted to expand their patent monopoly to secure a monopoly on or to control unpatented rotary members or other parts for poultry picking machines.

"24. The plaintiffs sell the patented machines, and also sell the patented fingers, which have a legitimate use as replacement for broken or worn out fingers on the patented machines which have been sold by the plaintiffs and their licensees."

After the commencement of Hunt v. Armour and Company, defendant purchased fingers licensed under the Hunt patent and installed them in the accused Albright machine and it argues that by this purchase of the fingers which are covered by one group of claims in the patent, it also obtained a license under the separate groups of machine claims. Each claim of the patent, however, is a separate grant. Sanitary District of Chicago v. Activated Sludge, Inc., 7 Cir., 90 F.2d 727; Radio Corp. of America v. Andrea, 2 Cir., 90 F.2d 612; National Aluminate Corp. v. Permutit Co., 8 Cir., 145 F.2d 175; Automatic Radio Mfg. Co. v. Hazeltine Research, Inc., 339 U.S. 827, 70 S.Ct. 894, 94 L.Ed. 1312. Under the circumstances disclosed by this record the mere sale of these patented fingers did not import a license. The patent grants conferred upon the patentee the right to a monoply on each claim with the right to exact compensation in respect thereto. We think the defense is not sustained by this record.

Being of the view that the court's findings of fact and conclusions of law are abundantly sustained by substantial evidence, the judgment appealed from is affirmed.