**TATE ENGINEERING, INC.**

v.

**The UNITED STATES and Severn Products, Inc., Third-Party Defendant.**

**No. 336–69.**

United States Court of Claims.

May 11, 1973.

Robert C. Miller, Washington, D. C., for plaintiff; Robert F. Conrad, Fort Lauderdale, Fla., atty. of record; Shaffert & Miller, Washington, D. C., of counsel.

J. Walter Schilpp, Philadelphia, Pa., atty. of record, for third-party defendant.

Louise O'Neil, Washington, D. C., with whom was Asst. Atty. Gen. Harlington Wood, Jr., for defendant.

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA, KUNZIG and BENNETT, Judges.

## OPINION

PER CURIAM:

This case comes before the court on plaintiff's exceptions to a recommended decision filed August 1, 1972, by Trial Commissioner Joseph V. Colaianni pursuant to Rule 134(h). The court has considered the case on the briefs and oral argument of counsel. Since the court agrees with the decision, as hereinafter set forth, it hereby affirms and adopts the same as the basis for its judgment in this case. Therefore, it is concluded that plaintiff is not entitled to recover and the petition is dismissed.

## OPINION OF COMMISSIONER

COLAIANNI, Commissioner:

This is a patent suit under 28 U.S.C. § 1498. Plaintiff, Tate Engineering, Inc., seeks "reasonable and entire compensation" for unauthorized use by the Government of plaintiff's patented invention. Only the issue of liability is before the court; accounting, if any, is deferred to later proceedings. The patent in suit is U.S. Patent 3,236,018 (hereinafter the "Graham" patent), issued on February 22, 1966, to Donald C. Graham, Dale E. Hein and George H. Stram on an invention entitled "Load-Supporting Metallic Floor Panels." All rights to the panel were assigned by the inventors to plaintiff on July 14, 1963, and plaintiff has continuously been the sole and exclusive owner of the patent.

Plaintiff moved to join Severn Products, Inc. (hereinafter "Severn"), on the ground that Severn allegedly supplied to the Government, under contract, products embodying the invention described and claimed in the Graham patent and actively induced infringement by the Government of the Graham patent. Severn entered the case as a third-party defendant and was represented by counsel during the entire pendency of the case before this court. Shortly after issue was joined, Severn and the Government filed a joint motion for summary judgment on the grounds that the accused product sold by Severn to the Government did not infringe any of the claims of the Graham patent. The trial commissioner recommended that the motion be denied. Tate Engineering, Inc. v. United States, 166 USPQ 329 (1970). The court affirmed, Tate Engineering, Inc. v. United States, 193 Ct.Cl. 1088 (1970), and remanded the case "to the

trial commissioner for further appropriate proceedings."

This case raises the usual issues of infringement and validity. The Graham patent has eight claims, but plaintiff concedes that claims 1 through 4, 7 and 8 are not infringed by defendants. The issues to be decided include: (1) whether claims 5 and 6 of the Graham patent are infringed by the Severn product; (2) whether these two claims are invalid because they do not meet the standards set forth in 35 U.S.C. § 102 or § 103; (3) whether these claims are unenforceable and/or invalid by reason of plaintiff's failure to disclose to the Patent Office during prosecution of the Graham patent allegedly pertinent prior art of which it had knowledge; and (4) whether the claims are invalid because the patent fails to "particularly point out and distinctly claim" the invention as required by 35 U.S.C. § 112.

█ During the trial, defendants introduced prior art which had not been considered by the Patent Office, and which was not relied upon in their motion for summary judgment. Defendants rely primarily upon this additional prior art to support their joint position relative to the above issues. For reasons expressed below, claims 5 and 6 are held to be not infringed.

## Background

Prior to the invention of the Graham panel, plaintiff was not engaged in the manufacture and/or sale of elevated flooring, although several other firms were then in the field. Based on a market study, plaintiff decided to enter the field and contracted with Graham Engineering, Inc., a consulting engineering firm, to develop a unique floor panel. The Graham panel was invented under this contract by Graham Engineering employees, and all patent rights in the panel were assigned to plaintiff on July 15, 1963, one day before the Graham application was filed in the Patent Office. Plaintiff began manufacturing and selling the Graham panel in late 1962 or early 1963.

## Patent in Suit

The invention disclosed by the Graham patent relates to a metal panel that can be combined with similar panels to form a load-supporting elevated floor. Individual panels, generally square in plan view, are usually supported above a subflooring by pedestals at each corner. The principal objective of such a panel is to support heavy loads without itself being of prohibitive thickness and weight. By way of example, elevated metal flooring is frequently used in connection with computer installations. Heavy computer equipment is easily supported on the elevated flooring, and the many interconnecting power and signal-carrying cables are conveniently routed through the space provided between the elevated flooring and subflooring.

The panel disclosed by the Graham patent is formed from two superimposed flat metal sheets. The upper sheet is imperforate throughout its entire area and supports the load upon its top surface. In the preferred embodiment, however, a finishing material, such as linoleum or floor tiling, is affixed to the top surface. The lower sheet is positioned directly beneath the upper sheet and after a number of incisions and bends, a pattern of square openings arranged in parallel rows and columns is formed in the lower sheet. The rows and columns of square openings are separated by a gridwork of parallel rows and columns of straight metal tension strips that remain in the plane of the lower sheet. These tension strips extend between opposite edges of the lower sheet.

Furthermore, as a result of the incisions and bends, struts are provided at the edges of the openings. The struts project toward the upper sheet, and their terminal ends are bent for attachment to the undersurface of the upper sheet. By design, it is intended that loads applied to the upper sheet will be transmitted through the struts, to the tension strips of the lower sheet. The load-supporting capability of a panel is

proportional to the cube of the distance between the upper and lower sheets. Thus, by increasing the length of the struts, the load-supporting capability of a panel will be increased. In addition, the strength of a panel is dependent upon the number of struts and amount of contact area between the struts and the undersurface of the upper sheet.

While the preferred embodiment of the Graham panel has struts formed integral with only two edges of each opening, alternate embodiments of the invention have struts formed integral with all four edges of the openings. However, in all cases no waste occurs and all of the material which is cut and bent in the formation of the openings is utilized.

The edge of the Graham panel is constructed such that an upper bracing flange is formed by bending the edges of the upper sheet toward the lower sheet, and, at the same time, a lower bracing flange is formed by bending the edges of the lower sheet toward the upper sheet. The patent drawings show (see Fig. 5 appended hereto) that the upper bracing flange fits inside of and, for purposes of rigidity and strength, is welded to the lower bracing flange. Finally, the terminal portion of the lower bracing flange is bent outwardly and upwardly to form a vertical rib extending about the periphery of the panel and spaced slightly from the upper bracing flange. In the instances where a finishing material is applied to the upper sheet, a channel-shaped finishing material can be mounted upon this projecting rib.

The desired goals of the patented invention, as expressed in the patent specification, include the provision of: (1) a structural panel of minimum thickness relative to load-sustaining area and having the capability of supporting substantial concentrated loads in comparison with the weight of such a panel, (2) a plurality of different patterns of struts cut from the lower sheet, and (3) continuous edge flanges on both upper and lower sheets connected together to pro-vide stiffening of the edges of the panel, and, as well, to provide finished surfaces for the edges of the panel.

### The Patent Claims

Claim 5 of the Graham patent reads:

5. A rigid metallic floor panel constructed to be supported in horizontal operative position at the edges or corners and sustain heavy floor loads without appreciable deflection, said panel comprising in combination,

a pair of substantially flat metal sheets arranged in superimposed vertically spaced relationship,

the upper of said sheets being rigid and imperforate to bear and distribute loads supported by said panel and the lower sheet having a checkerboard grid comprising

a first set of parallel, straight strips extending longitudinally substantially from edge to edge of said sheet

and a second similar set of parallel, straight strips extending transversely to said first set substantially from edge to edge of said sheet,

said strips providing evenly arranged, parallel rows of openings therebetween,

strut members integral with certain edges of said grid strips and extending upwardly therefrom into firm engagement with the lower surface of the said upper sheet and fixed thereto to transmit load forces from said upper sheet to said lower tension-sustaining sheet,

the peripheral edges of at least one of said sheets being bent at right angles to the plane of said sheet to form a marginal bracing flange around all edges of said sheet and connected to the periphery of the other sheet,

the terminal edge of said bracing flange being bent out of the plane of said flange and arranged in conjunction with the periphery of the other sheet to form a narrow lon-

gitudinal rib extending around all sides of said panel,

a wear surface layer secured to the top of said other sheet,

and a channel-shaped finishing strip receiving said longitudinal rib within the channel thereof to secure said strip to said panel,

said finishing strip closely surrounding the edges of said wear surface layer and having its top surface flush with said layer.

Claim 6, which is dependent upon claim 5, reads:

6. The floor panel according to claim 5 in which said one of said panels having its peripheral edges bent at right angles to the plane thereof is the lower one having the checkerboard grid.

### Infringement

Plaintiff contends that Severn has manufactured and sold elevated flooring to the Government within six years immediately preceding the filing of this suit, which allegedly infringes its patent. The Severn panel includes an upper imperforate metal sheet upon which is secured a finishing material and a lower perforate metal sheet spaced vertically from the upper sheet by metal struts. Four essentially triangular-shaped struts per square opening are formed by cutting and removing sections of metal from the lower sheet and bending the remaining metal toward the upper sheet. As a result of this operation, the lower sheet is made up of parallel rows and columns of square openings separated by parallel rows and columns of tension strips remaining in the plane of the lower sheet. The edge construction of the Severn panel is formed by first bending the peripheral edges of the lower sheet upwardly into a vertical bracing flange. The terminal portions of the vertical bracing flange are then bent outwardly from the interior portion of the panel flush with the undersurface of the upper sheet and attached thereto. In this manner, a peripheral horizontal lip or flange is formed. A channel-shaped finishing strip then is inserted over this horizontal flange so as to lie flush with the finishing material on the upper sheet.

■■ In considering the question of infringement, it is necessary to initially establish the scope and breadth of the patent claims allegedly violated. In this particular instance, it is therefore necessary to establish the scope of claims 5 and 6 of the Graham patent so as to determine if the claims can be "read" on the accused Severn panel. A claim must be read in light of the specification. Seymour v. Osborne, 78 U.S. 516, 547, 11 Wall. 516, 20 L.Ed. 33 (1870); United States v. Adams, 383 U.S. 39, 49, 86 S.Ct. 708, 15 L.Ed.2d 572 (1966). Its scope, however, is not limited only to those specific embodiments actually disclosed, but is expanded under the doctrine of equivalents to include embodiments that perform substantially the same function in substantially the same way to produce substantially the same result as the disclosed invention. Graver Tank & Mfg. Co. v. Linde, 339 U.S. 605, 608, 70 S.Ct. 854, 94 L.Ed. 1097 (1950).

■■ The range of equivalents to be accorded will depend upon whether the invention is a pioneer invention or merely a small advance over the prior art. If the former, a broad range of equivalents applies commensurate with the patentee's contribution to the art. McCullough Tool Co. v. Well Surveys, Inc., 343 F.2d 381, 401 (10th Cir. 1965), cert. denied, 383 U.S. 933, 86 S.Ct. 1061, 15 L.Ed.2d 851 (1966); Priebe & Sons Co. v. Hunt, 188 F.2d 880, 881 (8th Cir. 1951), appeal dismissed per stipulation, 342 U.S. 801, 72 S.Ct. 92, 96 L.Ed. 607 (1951). If the latter, only a narrow range of equivalents applies. Soundscriber Corp. v. United States, 360 F.2d 954, 961, 175 Ct.Cl. 644, 652 (1966); Trusty v. United States, 132 F.Supp. 340, 344, 132 Ct.Cl. 192, 199–201 (1955), cert. denied, 350 U.S. 975, 76 S.Ct. 453, 100 L.Ed. 846 (1956); Richardson v. United States, 72 Ct.Cl. 51, 65 (1930), cert. de-

nied, 285 U.S. 543, 52 S.Ct. 393, 76 L. Ed. 935 (1931). Furthermore, the range of equivalents may be limited under the doctrine of file wrapper estoppel if the patentee has narrowed his claims in order to avoid the prior art. Graham v. John Deere Co., 383 U.S. 1, 33, 86 S. Ct. 684, 15 L.Ed.2d 545 (1966). Or, as this court has said in connection with an earlier consideration of these doctrines, "The doctrine of equivalence is subservient to file wrapper estoppel." Autogiro Co. of America v. United States, 384 F.2d 391, 400, 181 Ct.Cl. 55, 67 (1967).

■ From a review of the prosecution history of the Graham application while it was pending in the Patent Office, and also taking into consideration the prior art references introduced during trial that were not considered by the Patent Office, it is concluded that the Graham patent is not a pioneer patent. Therefore, the claims of the Graham patent are not entitled to a broad full range of equivalents.

Establishing the correct scope of claims 5 and 6 of the Graham patent is of particular necessity in this case because of the reasons which defendants advance for their position of noninfringement. First, they contend, under the doctrine of file wrapper estoppel and also because the Graham panel is not a pioneer invention, that the recitation "strut members integral with *certain* edges of said grid strips" (emphasis added) in the claims must be narrowly construed to cover only those panels having strut members integral with *less* than all edges of the grid openings. Thus, they argue, since the Severn panel has strut members formed integrally with *all* edges of the grid openings, the limitations of the claims are avoided. This contention was thoroughly treated earlier in the commissioner's opinion on defendants' motion for summary judgment, Tate Engineering, Inc., *supra*, 166 USPQ at 333. There it was held that, in view of the specification and file history of the Graham patent, claims 5 and 6 are not restricted to a structure hav-

ing less than four struts per grid opening. Since no additional evidence was presented at trial on this point, and since it is believed that our earlier holding was correct, it is concluded that claims 5 and 6 cover panels having four struts per opening. Therefore, the strut construction of the Severn panel is found to fall within the scope of the above-quoted language of claims 5 and 6.

Defendants next urge that the recitation:

the terminal edge of said bracing flange being bent out of the plane of said flange and arranged in conjunction with the periphery of the other sheet to form a narrow longitudinal rib extending around all sides of said panel,

found in the claims at issue, when construed in light of the edge structure disclosed by the Graham patent, does not cover the Severn edge structure. For reasons which are explained in more detail hereinafter in connection with the discussion and treatment of the validity of the Graham patent, it is concluded that if this claim recitation is construed narrowly enough to avoid invalidity of the claims, then the claims are not infringed by the accused edge structure. International Glass Co. v. United States, 159 USPQ 434, 442 (1968), aff'd per curiam, 408 F.2d 395, 405, 187 Ct.Cl. 376, 394 (1969); Farrell Marine Devices, Inc. v. United States, 152 USPQ 328, 329 (1966), aff'd per curiam, 377 F.2d 560, 561, 179 Ct.Cl. 790, 792–793 (1967).

■ This court has consistently avoided a broad construction of claims which would legally render them invalid. Instead, a narrow construction of patent claims, "so as to secure to the patentee the just fruits of his true invention," has been resorted to. Dominion Magnesium Ltd. v. United States, 320 F.2d 388, 394, 162 Ct.Cl. 240, 249 (1963); *International Glass Co.*, *supra*.

### Validity

Defendants contend that claims 5 and 6 are invalid under 35 U.S.C. § 112 be-

cause they are indefinite. On the basis of the above-detailed consideration of the claims at bar, this contention can be quickly disposed of, and it is found that the claims are definite and comply with all the requirements of 35 U.S.C. § 112.

Defendants next urge that claims 5 and 6 are invalid under 35 U.S.C. § 102(a)[1] as being anticipated by U.S. Patent 3,196,763 (hereinafter the "'763 Rushton" patent), which is described in considerable detail in finding 17. (See appendix.) The '763 patent was not considered by the Patent Office during examination of the Graham patent application. This patent basically discloses a two-sheet metal panel that can be supported in an elevated position by pedestal mounts at its corners. The panel consists of an imperforate metal top sheet that is capable of having a finishing material, such as tile or linoleum, secured to its upper surface. The bottom metal sheet is formed, by a deep drawing operation, into a truss pan that consists of parallel rows and columns of inverted cups or pedestals. The metal between the cups is not displaced or disturbed by the drawing operation, but remains in the plane of the lower sheet to form parallel rows and columns of flat rim areas about the edges of the cups. The truss pan thus resembles a familiar cupcake pan. The bottoms of the cups are flat and are positioned flush with and welded to the undersurface of the top sheet.

The peripheral edges of the truss pan are bent at right angles toward the top sheet to form a vertical flange about the panel. Finally, the terminal portion of the vertical flange is bent outwardly from the interior portion of the truss pan, parallel to and flush with the undersurface of the top sheet. This portion then is spot welded to the undersurface of the top sheet to form a horizontal lip or flange about the periphery of the panel.

■ Defendants contend that claims 5 and 6 of the Graham patent are anticipated, in accordance with the provisions of 35 U.S.C. § 102(a), by the disclosure of the '763 patent. To anticipate, a prior art reference must disclose each and every element of a claimed invention, or its equivalent, and the element must function in substantially the same way to produce substantially the same result. Palmer v. United States, 163 USPQ 250, 254, aff'd per curiam, 423 F.2d 316, 321, 191 Ct.Cl. 346, 354 (1970), cert. denied, 400 U.S. 951, 91 S. Ct. 242, 27 L.Ed.2d 258.

While there are similarities in overall appearance and function between the Graham and Rushton '763 panels there is not the necessary identity of structure, purpose and result which is required to make out an anticipation within the meaning of 35 U.S.C. § 102. Straussler v. United States, 339 F.2d 670, 168 Ct.Cl. 852 (1964). Detailed differences between the '763 Rushton patent and the Graham invention have been pointed out in finding 17. It is only necessary to here point out that the '763 Rushton patent does not disclose "evenly arranged, parallel rows of openings" in the lower sheet, "a channel-shaped finishing strip" nor "a wear surface layer secured to the top of [the upper sheet]" as called for by claims 5 and 6. These missing claimed elements prevent the Rushton patent from being an anticipation of the Graham patent within the meaning of section 102(a). Furthermore, no single reference cited by the Patent Office, or defendants, is found to disclose, as is necessary to make out a section 102(a) anticipation, all of the elements of claims 5 and 6.

■ Defendants also question whether claims 5 and 6 meet the statutory

---

1. § 102. *Conditions for patentability; novelty and loss of right to patents.*

A person shall be entitled to a patent unless—

(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, * * *.

standards set forth in 35 U.S.C. § 103.[2] Title 35 U.S.C. § 103 requires that in order for a patent to be granted on an invention, the invention must not be obvious to one of ordinary skill in the art at the time it was made. To establish if claims 5 and 6 define an invention that is obvious within the meaning of 35 U.S.C. § 103 requires a factual analysis of (1) the scope and content of the prior art, (2) the differences between the prior art and the claims in issue and (3) the level of skill in the pertinent art. Secondary considerations such as commercial success, satisfying long-felt need and failure of others may have relevance. *Graham, supra; Palmer, supra;* Martin-Marietta Corp. v. United States, 373 F.2d 972, 973, 179 Ct.Cl. 70, 72 (1967).

Defendants, in challenging the validity of claims 5 and 6 under 35 U.S.C. § 103, rely primarily on the '763 Rushton patent, U.S. Patent 3,008,551 (hereinafter referred to as the "Cole" patent), and a brochure published by Washington Aluminum Co. (hereinafter referred to as "WACO"), a competitior of plaintiff in the elevated flooring business. The WACO reference and the '763 Rushton patent were not cited by the patent examiner during prosecution of the patent application.

Defendants contend, *inter alia,* that if claims 5 and 6 of the Graham patent are construed broadly to read upon the accused Severn panel, they are invalid. Defendants particularly argue that the prior art references disclose all of the broadly construed elements of the claims, and thus the subject matter of claims 5 and 6, taken as a whole, would have been obvious to a person of ordinary skill in the panel art at the time that plaintiff's panel was made.

The '763 Rushton patent has already been briefly described in connection with defendants' arguments of patent invalidity under 35 U.S.C. § 102. Defendants, in connection with their § 103 defense, argue that any difference between the patented panel and the prior art '763 Rushton panel would have been obvious, at the time of the making of the Graham panel, to a person skilled in the prior art.

For example, defendants point out that the prior art '763 panel does not have struts that are formed, as is the case with the Graham panel, by cutting and bending material from the lower sheet. However, they contend that the upstanding pedestals of the '763 patent serve the same function as the Graham struts, and can be replaced by struts such as those shown in the Cole patent. As explained in more detail in finding 15, the Cole patent teaches forming a metal panel having an imperforate upper sheet and a perforate lower sheet rigidly separated by struts. The struts are formed by incisions, and, after shaping, are attached to the undersurface of the upper sheet. There is no doubt that the Cole patent specifically addressed the problem of inherent depth limitations on drawn panels, such as the '763 Rushton panel, and the following statement shows Cole's appreciation of the advantages of a panel which is formed by cutting and drawing over one formed by merely a drawing process:

> A further object of the invention is to monolithically fabricate a core panel that is partly split and formed and partly drawn in such a manner as to permit a much greater panel depth than is possible to provide with rigidized cores which are dependent upon the maximum limits of the drawing ability of the metal for their maximum panel depths.

Plaintiff would brush aside defendants' arguments relating to the '763

---

2. *§ 103. Conditions for patentability; non-obvious subject matter.*

A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

Rushton and Cole patents and the WACO panel by pointing out that the edge construction called for by the Graham claims is not found in any of the prior art references. Indeed, the Cole patent does not show nor does it disclose the use of any type of edge construction. The WACO panel does disclose an edge structure. The edge construction of the two-sheet WACO panel is formed by first bending the periphery of the lower sheet toward the upper sheet. The terminal edges are then bent flush with the undersurface of the upper sheet to form in conjunction with the edges of the upper sheet, a horizontal lip or flange extending about the perimeter of the panel. Finally, the ends of the horizontal flange are bent upward at right angles into a vertical rib spaced slightly from the upper sheet and extending about the panel perimeter. A finishing strip can be secured to the top and inner surfaces of the vertical rib. However, due to inadequate strength in the horizontal flanges, the WACO panel was not capable of supporting heavy loads with only pedestal supports at each corner. Instead, the WACO panel was intended to be used with "stringers." Stringers consist of horizontal support beams positioned under the horizontal edge flange of the panel so as to enable the panel to support heavy loads.

Plaintiff argues that its edge construction adds the necessary strength and rigidity to enable its panel to be supported in an elevated position by corner pedestal amounts. Moreover, plaintiff urges that none of the prior art panels, including the commercial form of the Rushton panel, can be satisfactorily supported by corner pedestal mounts. On the other hand, plaintiff points out that:

> * * * both the patented and accused panels employed ribs as defined in the claims in combination with other structure to produce panels which were capable of support only at their corners * * *.

Plaintiff thus appears to be arguing that the claims of the Graham patent, for purposes of establishing infringement, cover panels having narrow, strength-reinforcing edge flanges or ribs, such as those employed on the Graham and accused Severn panels, but, in order to avoid invalidity, that the same claims do not read upon panels having somewhat wider, relatively weak edge flanges such as the prior art WACO and Rushton panels.

Plaintiff's carefully reasoned argument is untenable for the following reasons: first, the prior art '763 Rushton patent specifically states that the Rushton panels "can be supported by pedestal mounts at their corners"; second, the corner supports for the accused Severn panel are not placed under the narrow edge flange, but are placed under the outer corners of the tension strips in the lower sheet. Consequently, the Severn panel is not supported by its narrow edge flange. While the narrow Severn edge flange may be better able to resist vertical forces applied to the edges of the panel than the somewhat wider Rushton edge flange, this fact is completely unrelated and irrelevant to plaintiff's claim that a narrow edge flange enables a panel to be supported by corner pedestal mounts, while a wide edge flange does not enable a panel to be so supported.

Defendants further point out that the horizontal edge flange of the '763 Rushton patent is structurally identical to the horizontal edge flange of the Severn panel (see the drawing appended hereto), except that the former appears to be wider than the latter. Defendants then argue that a patent claim cannot be construed broadly for the purpose of establishing infringement and, at the same time, narrowly for the purpose of avoiding the prior art. *Dominion Magnesium Ltd., supra; International Glass Co., supra.* It is, therefore, necessary to determine whether claims 5 and 6, when broadly construed to read upon the accused Severn panel for the purpose of infringement, will not also read upon the prior art panels.

While it is absolutely essential to guard against a piecemeal reconstruction of the Graham invention by using the Graham patent as a blueprint, in this case the testimony of defendants' expert greatly decreases the chances of such a hindsight reconstruction from happening. Based upon the testimony of defendants' expert, and, as well, on the clear teaching of the prior art patents and the file history of the patent application, it appears to be a logical and obvious expedient to replace the drawn pedestals of the '763 Rushton panel by struts such as those shown in the Cole patent which are formed by incisions made in the lower sheet.

Further, to one of ordinary skill in the elevated flooring art, it would be an obvious design expedient to mount a "channel-shaped" finishing strip, such as shown in the WACO panel, on the Rushton floor panel. Thus, the prior art discloses all of the broadly construed elements, or their equivalents, and the manner in which to combine the elements to form the structure defined by claims 5 and 6. Accordingly, it is concluded that claims 5 and 6 of the Graham patent contain limitations that must be narrowly construed to avoid reading on the prior art panels. Particularly, the limitation relating to the edge construction of the Graham panel is found to be limited to the structure shown in the patent drawings or reasonable equivalents thereof. In conclusion, it is specifically found that the claims cannot be read broadly to cover the accused Severn panel, for if the claims are broadly construed to read on the Severn panel, they would be invalid and obvious, within the meaning of 35 U.S.C. § 103, in view of the teachings of the '763 Rushton and Cole patents and the WACO panel.

### Fraud on the Patent Office

Defendants also vigorously assert that claims 5 and 6 should be held invalid and/or unenforceable by reason of plaintiff's failure to disclose to the Patent Office during prosecution of the Graham patent the prior art WACO panel of which it had knowledge. In essence, defendants contend that plaintiff has perpetrated a fraud on the Patent Office, or is guilty of unclean hands in its dealings with the Patent Office.

Based on the finding that claims 5 and 6 are not infringed by defendants' accused structure if the claims are narrowly construed to avoid invalidity, it becomes merely academic, and totally unnecessary, to also hold that plaintiff's patent is unenforceable because of plaintiff's fraud on the Patent Office.

Defendants, however, also contend that plaintiff's patent should be found to be invalid because of plaintiff's failure to call the prior art WACO panel to the examiner's attention during the pendency of the application in the Patent Office. In support of its position, plaintiff relies on Norton v. Curtiss, 433 F.2d 779, 57 CCPA 1384 (1970), and Monsanto Co. v. Rohm & Haas Co., 312 F. Supp. 778 (E.D.Pa.1970).

As discussed hereinabove, the WACO panel was used, in conjunction with other prior art, to determine if the Graham invention would have been obvious, within the meaning of 35 U.S.C. § 103, to one of ordinary skill in the art. The WACO panel is clearly not an anticipation of plaintiff's invention within the meaning of 35 U.S.C. § 102. Accordingly, this case is distinguishable from both the *Norton* and *Monsanto* cases, *supra,* and all other cases, where the information withheld from the Patent Office was found to be of such a nature that if it had been disclosed the patent would not have issued. Certainly, the information allegedly withheld, the WACO panel, is not so material that one can conclude that the Patent Office would have refused to issue plaintiff's patent application if it had been aware of it. It is therefore concluded that defendants have failed to make out a case of fraud with the clarity and certainty required. See *McCullough Tool Co., supra,* at 394–395 (343 F.2d).

## APPENDIX

FIG. 2

FIG. 3:

FIG. 5

FIG. 10

FIG. 11

[A7514]

EDGE CONSTRUCTION

Accused Severn Panel

EDGE CONSTRUCTION

Rushton 3,196,763

[A7515]