**INTERDENT CORPORATION et al.**

v.

**The UNITED STATES.**

**No. 55–73.**

United States Court of Claims.

March 17, 1976.

Sherman Levy, Washington, D. C., attorney of record, for plaintiffs.

A. David Spevack, Washington, D. C., with whom was Asst. Atty. Gen. Rex E. Lee, Washington, D. C., for defendant.

Before COWEN, Chief Judge, and KUNZIG and BENNETT, Judges.

## OPINION

PER CURIAM:

This case comes before the court on defendant's motion, filed December 5, 1975, moving that the court adopt as the basis for its decision in this case the recommended decision filed October 10, 1975, by Trial Judge Joseph V. Colaianni pursuant to Rule 134(h), plaintiffs having failed to file any notice of intention to except thereto and the time for so filing pursuant to the rules of the court having expired. Upon consideration thereof, without oral argument,

since the court agrees with the recommended decision, as hereinafter set forth,* it hereby grants defendant's motion and adopts and affirms the said decision as the basis for its judgment in this case. It is therefore concluded that plaintiffs are not entitled to recover and the petition is dismissed.

## OPINION OF TRIAL JUDGE

COLAIANNI, *Trial Judge:* In this patent suit, brought pursuant to 28 U.S.C. § 1498, plaintiffs, Interdent Corp., Gertrude Rieff, Michael Kabnick, Robert Kabnick, and Garrison Trupp, seek "reasonable and entire compensation" for the alleged unauthorized use by the Government of plaintiffs' patented invention.[1] The parties agreed that the issue of infringement of the patent by defendant would be first determined. The parties further agreed that the amount of plaintiffs' recovery, if any, would be deferred until after a final ruling by the court on the question of infringement.

The patent in suit, United States Patent No. 2,733,713, hereinafter referred to as the "Kabnick" or "713" patent, issued on February 7, 1956, to Herbert H. Kabnick for an invention entitled "Oral Irrigator." Plaintiff, Interdent Corp., is the present owner of all right, title, and interest in the patent.[2]

Defendant moved to dismiss the original petition, filed on February 7, 1973, on the ground that the then sole plaintiff, Interdent Corp., sought recovery for unauthorized use by Government facilities operating on nonappropriated funds. Interdent Corp., on October 15, 1973, amended its petition to allege unauthorized use by appropriated funds facilities. The court thereafter treated defendant's motion as one for partial summary judgment, and granted it to the extent that Interdent was seeking to recover for alleged use by nonappropriated fund facilities. The remainder of the case was remanded to the trial division for further proceedings. *Interdent Corp. v. United States,* 488 F.2d 1011, 203 Ct.Cl. 296 (1973).

As originally framed by the pleadings, this case presented the usual issues of patent validity and infringement. However, during the pretrial proceedings, defendant agreed not to contest the validity of the Kabnick patent, but to rely solely upon the defense of noninfringement.[3] The Kabnick patent contains 6 claims, but plaintiffs urge the use and/or manufacture by or for defendant of the invention covered by claim 3 alone.

### The Patent in Suit

The Kabnick patent describes an electrically powered irrigating device which has a variety of applications in the field of dentistry, medicine, and the veterinary sciences in situations where it is desired to irrigate or cleanse with a treating fluid. In a teeth-cleaning operation, the irrigator produces a high velocity jet of fluid which, *inter alia,* stimulates the tissues and cleans the interdental spaces of the mouth.

---

* Whereas the court adopts the trial judge's separate findings of fact which are set forth in his report filed October 10, 1975, they are not printed herein since such facts as are necessary to the decision are contained in his opinion.

1. The suit was originally brought by Interdent Corp. The other plaintiffs were subsequently joined on July 23, 1974, pursuant to Rule 62.

2. Plaintiffs, Gertrude Rieff and her sons, Michael and Robert Kabnick, were declared owners of all right, title, and interest in the Kabnick patent on December 20, 1968, by a decree of final distribution of the estate of H. H. Kabnick. Gertrude Rieff, representing herself and her sons, assigned a 50 percent interest in the patent to plaintiff, Garrison Trupp, on August 24, 1971. On January 10, 1973, Rieff and Trupp assigned all right, title, and interest in the patent to plaintiff, Interdent Corp. Interdent Corp., as of the filing date of the present action, continued to be the sole and exclusive owner of the patent.

3. Pretrial proceedings also raised the issue of the assignability of claims for past infringement under the Anti-Assignment Act, 31 U.S.C. § 203. Defendant continued to urge the Anti-Assignment Act as a defense in its requested findings of fact and posttrial brief. However, in view of the results reached herein, the issue need not be considered and any ruling thereon is deferred to a later accounting trial, if that should become necessary.

Structurally, the irrigator includes a covered fluid receptacle. An electric motor is mounted on top of the cover member, with the receptacle being detachably secured to its bottom side. A pump is housed inside of the fluid receptacle such that upon attachment of the receptacle cover member, the pump can be driven by the electric motor. Fluid is transferred by operation of the pump from the receptacle to a flexible discharge conduit and nozzle for application. In addition, a composite switch and valve assembly to simultaneously selectively open the flexible conduit to fluid flow and actuate the motor to run the pump or close the flexible conduit to fluid flow and deactuate the motor to stop the pump is provided.

### The Patent Claim

Claim 3, the only claim of the '713 patent allegedly infringed by the defendant, provides:

3. An irrigator comprising, a selectively actuated electric motor; a pump drivingly connected to said motor to be driven thereby; a receptacle cover member mounted on said motor; a receptacle for a treating fluid; means detachably securing said receptacle to said cover member; inlet means connecting said pump to said receptacle whereby fluid is drawn from said receptacle; outlet means in said pump for directing fluid therefrom; a selectively opened and closed conduit operatively connected to said outlet for directing outlet fluid from said pump; a nozzle on said conduit for controlling the stream of fluid flowing from the conduit; and a composite switch and valve operatively connected to said electric motor and conduit for selectively simultaneously actuating said motor and opening said conduit to fluid flow and stopping said motor and closing said conduit to fluid flow.

### Infringement

Plaintiffs argue that defendant's use of the Water Pik,[4] the Model 100 Surgical Jet Lavage, and the Model 200 Surgical Jet Lavage (hereinafter the "Water Pik," "Model 100," and "Model 200," respectively) infringes the structural combination defined by claim 3 of the '713 patent. Since the Government admits use of these 3 accused devices during the relevant accounting period and since, as previously explained, defendant has dropped its defense of invalidity of claim 3, the sole question to be answered is whether or not the accused devices, and structural equivalents, are covered by the claim 3 combination of the patent in suit.

After careful consideration of each party's contentions, and for reasons which will be explained hereinbelow, it is concluded that none of the accused devices infringe claim 3 of the Kabnick patent.

As a first step toward resolving the above question, it becomes necessary to determine the scope and breadth of claim 3.

 It is axiomatic that the metes and bounds of an invention are defined by the claims and not by the drawings or specification of a patent. *Strumskis v. United States,* 474 F.2d 623, 627, 200 Ct.Cl. 668, 675–76, *cert. denied,* 414 U.S. 1067, 94 S.Ct. 576, 38 L.Ed.2d 472 (1973). Equally long established is the interpretive process of looking to the patent specification to ascertain the scope of the claimed invention. *Seymour v. Osborne,* 11 Wall. 516, 78 U.S. 516, 547, 20 L.Ed. 33 (1870); *United States v. Adams,* 383 U.S. 39, 49, 86 S.Ct. 708, 15 L.Ed.2d 572, 148 USPQ 479, 482 (1966). However, in order to prevent a fraud on a patent, the scope of a claim is not exclusively limited to the specific embodiments shown by the specification. Rather, the structural limitations of a claim may be expanded to include equivalent embodiments that perform substantially the same function in substantially the same way to produce substantially the same result as the disclosed invention. This is so even though the elements of the combination differ in name, form or shape. *Graver Tank & Mfg. Co. v. Linde Co.,* 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097, 1102, 85 USPQ 328, 330 (1950).

---

**4.** Registered trademark.

This doctrine is no stranger to patent litigation generally or to patent litigation in this court specifically. Indeed, the interplay between this doctrine on the one hand and file wrapper estoppel on the other was succinctly explained by this court in *Tate Engineering, Inc. v. United States,* 477 F.2d 1336, 1340–41, 201 Ct.Cl. 711, 719–20 (1973):

> The range of equivalents to be accorded will depend upon whether the invention is a pioneer invention or merely a small advance over the prior art. If the former, a broad range of equivalents applies commensurate with the patentee's contribution to the art. *McCullough Tool Co. v. Well Surveys, Inc.,* 343 F.2d 381, 401, [145 USPQ 6, 22] (10th Cir. 1965), *cert. denied,* 383 U.S. 933, 86 S.Ct. 1061, 15 L.Ed.2d 851 (1966); *Prieve & Sons Co. v. Hunt,* 188 F.2d 880, 881, [89 USPQ 299, 300] (8th Cir. 1951), *appeal dismissed per stipulation,* 342 U.S. 801, 72 S.Ct. 92, 96 L.Ed. 607 (1951). If the latter, only a narrow range of equivalents applies. *Soundscriber Corp. v. United States,* 360 F.2d 954, 961, 175 Ct.Cl. 644, 652, [149 USPQ 640] (1966); *Trusty v. United States,* 132 F.Supp. 340, 344, 132 Ct.Cl. 192, 199–201, [105 USPQ 474, 477] (1955), *cert. denied,* 350 U.S. 975 (1956); *Richardson v. United States,* 72 Ct.Cl. 51, 65 (1930), [7 USPQ 194, 197], *cert. denied,* 285 U.S. 543, 52 S.Ct. 393, 76 L.Ed. 935 (1931). Furthermore, the range of equivalents may be limited under the doctrine of file wrapper estoppel if the patentee has narrowed his claims in order to avoid the prior art. *Graham v. John Deere Co.,* 383 U.S. 1, 33, 86 S.Ct. 684, 15 L.Ed.2d 545, [148 USPQ 459, 473] (1966). Or, as this court has said in connection with an earlier consideration of these doctrines, "The doctrine of equivalence is subservient to file wrapper estoppel." * * *

Defendant, after pointing to the precise language used in claim 3, the prior art, and the prosecution history of the application, argues that certain of the elements of the claim at bar are entitled to only a narrow range of equivalents. For reasons which follow, this contention is sound.

Looking to claim 3, defendant specifically contends that the recitation—

> * * * a composite switch and valve operatively connected to said electric motor and conduit for selectively simultaneously actuating said motor and opening said conduit to fluid flow and stopping said motor and closing said conduit to fluid flow * * *

should be literally construed.

During its pendency in the Patent Office, the claim in suit was rejected on the basis of the system taught by United States Patent No. 1,792,245, which issued to Frederick E. Robinson, and various other patents, which supplemented particular detail of the prior art Robinson system. Specifically, the Patent Office examiner rejected the claim in suit, which corresponded to application claim 9, as unpatentable over the Robinson patent in view of United States Patent No. 2,295,982 to Joseph Widman and United States Patent No. 2,634,885 to Joseph M. North.

The Robinson patent shows an electric motor driven pump with a combined valve and electric switch for opening or closing a nozzle-tipped discharge hose concurrently with the turning off or on of the electric motor. The Widman patent shows a pump mounted in a fluid receptacle. A motor is mounted above the pump for actuation of the same. Upon actuation of the pump, fluid is removed from the receptacle. The North patent substantially shows the same arrangement as Widman except that the receptacle is provided with a cover and the electric motor is mounted thereupon.

In response, Kabnick pointed out that:

> Applicant has disclosed and is claiming a novel irrigator particularly adapted (though not limited) to irrigation and cleansing of the teeth * * * together with a novel one-button control, combined flexible valve and switch structure.

Kabnick appears to have successfully distinguished all of his pending claims from the Robinson, Widman, and North refer-

ences by pointing out that none of the prior art patents disclosed or taught his combined flexible valve and switch structure. Specifically, Kabnick stressed that none of these three references—

* * * discloses a fluid pump supply and control system having applicant's novel compact simplified one-button operated combined flexible valve and pump control switch in a single simple housing mounting a suitable directionally adjustable spray nozzle, which to a great degree makes the claimed irrigator commercially feasible and which is recited in each of the now pending claims. The most pertinent reference to Robinson discloses a cumbersome rudimentary spigot valve with separate externally mounted adjacent switch and the two are not compactly combined for simultaneous valve and switch operation as recited in the claims.

Following an additional Patent Office action in which cosmetic-type objections to the patent specification and claims were made, the patent was passed to issue.

Since the Robinson patent discloses a single lever, simultaneous valve and pump control switch, it appears clear that the claim in suit was allowed by the Patent Office because of the "novel" one-button operated combined flexible valve and pump control switch.[5] With the above Patent Office prosecution in mind, it is evident that claim 3 should be construed to cover a combination of elements that includes a composite flexible pinch valve and switch device for simultaneously actuating the motor and opening the conduit. Plaintiffs are estopped, by the representations of applicant which appear in the file wrapper, from expanding the claim under the doctrine of equivalents to include switch and valve assemblies of broader scope. *Autogiro Co. of America v. United States,* 384 F.2d 391, 181 Ct.Cl. 55, 155 USPQ 697 (1967). Moreover, in instances such as those at bar, where a patent depends for its novelty on a single feature, courts have been reluctant to ex-

pand the coverage of a claim by the doctrine of equivalents to cover a device which lacks that single feature. *Stearns v. Tinker & Rasor,* 252 F.2d 589, 600, 116 USPQ 222, 231 (9th Cir. 1957).

■ In a long line of cases stretching back at least to *Pacific Submarine & Earthquake Proof Wall Co. v. United States,* 19 Ct.Cl. 234 (1884), and, as explained more recently in *Strumskis v. United States, supra,* 474 F.2d at 627–28, 200 Ct.Cl. at 676, this court has consistently maintained that each element of a patented combination is considered to be material and essential. Thus, the omission of any one of the elements of the claimed combination avoids infringement.

■ Claim 3 contains an additional limitation which is not found in any of the other claims of the patent in suit. Specifically, whereas claim 3 requires a receptacle cover member for the fluid receptacle upon which the electric motor for operating the pump is mounted, none of the other allowed claims calls for such a structural arrangement. It is well established that structural limitations which differentiate one claim from another are not to be ignored by the courts. To do otherwise would remove or blur any distinction between the patent claims and render all claims of equal scope and coverage. *See Autogiro Co. of America, supra,* 384 F.2d 391, 181 Ct.Cl. at 74.

Having established the proper scope to be afforded claim 3, all that remains is to determine if the accused devices come within the metes and bounds of the claim.

*None of Accused Devices Infringe Claim 3*

■ Plaintiff alleges that defendant's use and/or procurement of the Water Pik infringes claim 3 of the Kabnick patent. The Water Pik is a commercial device which comprises a selectively actuatable electric motor for driving a reciprocating piston pump. The pump and motor are located in a suitable housing, with the motor being mounted on a plate which is secured to the

---

5. It is observed that the prior art collectively suggests substantially all other features recited in the claims.

housing. A fluid receptacle is detachably secured to the top of the housing and feeds fluid to the pump. The pump emits a pulsating stream of fluid through an outlet conduit which is equipped with a suitable nozzle. The Water Pik is actuated by a single electric switch which starts the motor. In turn, the motor activates the pump to produce a jet of fluid at the nozzle outlet. The Water Pik does not include a valve to open or close the passage of fluid through the nozzle. The motor and pump are both deactivated by turning off the switch. However, because a valve to control the flow of fluid through the outlet conduit is not provided, fluid can be siphoned out of the receptacle if the nozzle is left in a downwardly pointed position.

Plaintiffs have not demonstrated that the accused Water Pik includes a composite switch and valve, or its equivalent, as set forth in claim 3. To the contrary, the testimony of record establishes the Water Pik utilizes a solitary switch for activation of the unit and does not employ a valve for control of fluid flow through the outlet conduit.

It is, accordingly, concluded that the Water Pik does not infringe claim 3 of the patent in suit.

Attention next turns to the Model 100 Surgical Jet Lavage. The Model 100 was manufactured under an Army contract to treat battlefield wounds. The device differs significantly from the Kabnick irrigator. To begin, the device is provided with an inlet conduit, instead of a fluid receptacle, for feeding fluid to a pump. An additional distinction is found in the manner for controlling fluid flow through the discharge conduit. While the Kabnick patent requires a composite switch and valve for concurrently turning on the electric motor and permitting fluid flow from the discharge nozzle, the Model 100 instead only utilizes a switch to actuate the motor. Actuation of the motor in turn results in fluid flow through the discharge conduit.

Thus, since the Model 100 does not have a composite switch and valve to simultaneously actuate the motor and open the outlet conduit, it does not infringe claim 3 of the Kabnick patent.

Finally, the Model 200 Surgical Jet Lavage is a commercially available device for cleaning and irrigating body wounds. Structurally, it consists of a peristaltic pump which is connected to an electric motor. The motor is mounted next to a fluid receptacle which is provided with a cover. A conduit is provided for conveying fluid from the receptacle to the pump. In turn, the pump conveys the fluid to an outlet conduit and nozzle for application to the wound. A hand-actuatable valve is provided in the outlet conduit to control the flow of fluid therethrough. A separate electric switch which is mounted on the unit's housing actuates the motor to run the pump.

Claim 3 does not cover the Model 200 device because the Model 200 device utilizes a valve for controlling the discharge fluid which is separate and distinct from the electric switch for actuation of the electric motor. This is markedly different from the " * * * novel compact simplified one-button operated combined flexible valve and pump control switch * * *," which Kabnick said was a necessary element of the claim 3 combination.

Moreover, infringement of claim 3 is not found because an additional structural limitation of claim 3 is nowhere found in any of the accused devices. Specifically, none of the accused devices are provided with a receptacle cover member to which the electric motor can be mounted.

*Plaintiffs' Impairment of Function Argument*

Plaintiffs also contend that the accused devices infringe claim 3 since they are equivalent to the patented device, but with their functions impaired to evade infringement. In other words, the accused devices are purported to be imperfect copies of the patented device, using the same idea, principle, and teaching embodied therein.

An accused device may infringe a patent even though it does not utilize fully or adopt the best mode of practicing the invention. *Admiral Corp. v. Zenith Radio*

*Corp.*, 296 F.2d 708, 717, 131 USPQ 456, 463 (10th Cir. 1961). Mere colorable variations of a patented invention do not avoid infringement. *Sanitary Refrigerator Co. v. Winters*, 280 U.S. 30, 50 S.Ct. 9, 74 L.Ed. 147, 3 USPQ 40 (1929). Likewise, impairment of function and lessening of results, efficiency or advantages do not avoid infringement where the substance is nevertheless appropriated. However, an impaired or inferior device which does not include the substance or novelty of the claimed invention does not infringe. *Pennsylvania Research Corp. v. Lescarboura Spawn Co.*, 29 F.Supp. 340, 347, 42 USPQ 375, 382 (E.D.Pa.1939); *Abbott v. Barrentine Mfg. Co.*, 255 F.Supp. 890, 899, 149 USPQ 287, 294 (N.D.Miss.1966); *Stearns, supra; Admiral Corp., supra.*

█ In the present case, it has been determined that the substance or novel aspect of claim 3, which distinguishes the combination from prior art combinations, is the composite switch and pinch valve assembly. This is evident, as enunciated above, from a thorough consideration of the prior art, the prosecution history of the application, and the patent itself. Infringement by the accused structures is not proved since an essential element of claim 3 is not present in any accused device. *Strumskis, supra; Stearns, supra;* and *Kay Patents Corp. v. Martin Supply Co.*, 202 F.2d 47, 51, 96 USPQ 225, 228 (4th Cir. 1953).

It is concluded that defendant has not infringed claim 3 of the Kabnick patent. Plaintiffs, accordingly, are not entitled to recover and their petition is dismissed.

## CONCLUSION OF LAW

Upon the findings of fact which are made a part of the judgment herein, the court concludes as a matter of law that plaintiffs are not entitled to recover, and the petition is dismissed.